UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**JOSEPH M.,**[1]

      **Plaintiff,**

                           **Case No. 1:21-cv-3815**
   **v.**                       **Magistrate Judge Norah McCann King**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

      **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Joseph M. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court the Court reverses the Commissioner's decision and remands the matter for further proceedings.

## I.    PROCEDURAL HISTORY

On July 16, 2015, Plaintiff protectively filed his application for benefits, alleging that he has been disabled since March 30, 2012. R. 131, 145, 383–86. The application was denied

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.
[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

initially and upon reconsideration. R. 176–81. Plaintiff sought a *de novo* hearing before an

administrative law judge ("ALJ"). R. 186–87. ALJ Nicholas Cerulli held a hearing on June 18,

2018, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R.

70–117. In a decision dated August 15, 2018, the ALJ concluded that Plaintiff was not disabled

within the meaning of the Social Security Act from March 30, 2012, Plaintiff's alleged disability

onset date, through the date of that decision. R. 149–63 (the 2018 decision"). On July 25, 2019,

the Appeals Council vacated the 2018 decision and remanded the case back to ALJ Cerulli for

further proceedings, as follows:

> The Council grants the request for review because of an error of law (20 CFR
> 404.970). It vacates the hearing decision and remands this case to an Administrative
> Law Judge for resolution of the following issue:
>
> - In a letter dated June 8, 2018, the claimant's representative indicated
>   that he was still waiting on evidence from Leslie Jack at the Division
>   of Vocational Rehabilitation Services and did not know whether it
>   would be available at least five business days before the scheduled
>   hearing (Exhibits 29E-30E). On July 30, 2018, a psychological
>   evaluation from Alan S. Gordon, Ed. D., dated July 9, 2018, was
>   uploaded into Eview. This evidence indicates that the evaluation
>   occurred in response to a request from the Division of Vocational
>   Rehabilitation, and the evidence was addressed to Leslie Jack (page
>   1). In the hearing decision, the Administrative Law Judge noted that
>   he declined to admit the psychological evaluation from Dr. Gordon,
>   as the document was submitted nearly six weeks after the claimant's
>   hearing, and the representative's pre-hearing correspondence did not
>   mention or address any outstanding records or exams from Dr.
>   Gordon (Decision pp. 1-2). However, the regulations at 20 CFR
>   404.935 require an Administrative Law Judge to admit into the
>   record all evidence the claimant informed the Agency about at least
>   five business days before the date of the scheduled hearing. In this
>   case, the representative informed the Agency about outstanding
>   evidence from Leslie Jack and the Division of Vocational
>   Rehabilitation Services at least five business days before the
>   scheduled hearing. Additionally, as the evaluation by Dr. Gordon
>   was performed several weeks after the hearing, the representative
>   could not have submitted it five days before the hearing. Therefore,
>   further consideration of the opinion evidence from Dr. Gordon is
>   needed.

Upon remand the Administrative Law Judge will:

- Obtain additional evidence concerning the claimant's impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512). The additional evidence may include, if warranted and available, consultative examinations and medical source opinions about what the claimant can still do despite the impairments.

- Further consider the opinion evidence dated July 9, 2018 from Dr. Gordon.

In compliance with the above, the Administrative Law Judge will offer the claimant an opportunity for a hearing, take any further action needed to complete the administrative record, and issue a new decision.

R. 171–72.

Pursuant to that order of remand, the ALJ held another hearing on March 2, 2020, at which Plaintiff, who was again represented by counsel, again testified, as did a vocational expert. R. 37–69. In a decision dated April 22, 2020, the ALJ again concluded that Plaintiff was not disabled within the meaning of the Social Security Act from March 30, 2012, Plaintiff's alleged disability onset date, through December 31, 2019, the date on which Plaintiff was last insured for Disability Insurance Benefits ("DIB"). R. 12–29 ("the 2020 decision"). The 2020 decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on January 12, 2021. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On July 6, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal

Rules of Civil Procedure. ECF No. 10.[3] On April 20, 2022, the case was reassigned to the

undersigned. ECF No. 25. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g). The United States Supreme Court has explained this

standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative
> record and asks whether it contains sufficien[t] evidence to support the agency's
> factual determinations. And whatever the meaning of substantial in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial evidence, this
> Court has said, is more than a mere scintilla. It means – and means only – such
> relevant evidence as a reasonable mind might accept as adequate to support a
> conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks

omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal

quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009)

(citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018

WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot

be set aside merely because the Court "acting de novo might have reached a different

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases
seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot
Project (D.N.J. Apr. 2, 2018).

conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210,

221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

### B.     Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec*., 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec*., 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   THE 2020 DECISION AND APPELLATE ISSUES

Plaintiff was 49 years old on March 31, 2012, his alleged disability onset date. R. 27. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and December 31, 2019, the date on which he was last insured for DIB. R. 14.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease; hypertension; major depressive disorder; mood disorder; learning

disorder; and borderline intellectual functioning. R. 15. The ALJ also found that Plaintiff's diagnosed asthma and obesity were not severe. R. 15–16.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 16–18.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 18–27. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as an automobile mechanic. R. 27.

At step five, the ALJ found that a significant number of jobs—*e.g.,* approximately 101,000 jobs as an addresser, approximately 90,000 jobs as a lens inserter, and approximately 138,000 jobs as a stuffer—existed in the national economy and could be performed by Plaintiff. R. 28–29. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from March 30, 2012, his alleged disability onset date, through December 31, 2019, the date on which he was last insured for DIB. R. 29.

Plaintiff disagrees with the ALJ's findings at steps three, four, and five, and also challenges the constitutionality of the appointment of the Commissioner. *Plaintiff's Memorandum of Law,* ECF No. 16; *Plaintiff's Reply Brief*, ECF No. 24. Plaintiff asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Id*. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 22.

IV.    **DISCUSSION**

Plaintiff contends, *inter alia*, that substantial evidence does not support the step five determination because the jobs of addresser, lens inserter, and stuffer do not exist in significant numbers in the national economy. *Plaintiff's Brief*, ECF No. 16, pp. 31–32 (citing App. 3, attached thereto); *Plaintiff's Reply Brief*, ECF No. 24, pp. 5–6. In advancing this argument, Plaintiff argues that the vocational expert's testimony regarding job data does not provide substantial support for the ALJ's findings at step five. *Id.* For the reasons that follow, the Court concludes that this issue requires remand.

At step five, an ALJ must determine whether the claimant, considering his RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). Unlike at the first four steps of the sequential evaluation, it is the Commissioner who bears the burden of proof at step five. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 205 (3d Cir. 2008) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005)). "'Advisory testimony from a vocational expert is often sought by the ALJ for that purpose [of determining whether other jobs exist in significant numbers in the national economy that the claimant could perform] . . . and factors to be considered include medical impairments, age, education, work experience and RFC.'" *Id.* at 205–06 (quoting *Rutherford*, 399 F.3d at 551).

In the case presently before the Court, the ALJ asked the vocational expert to assume a claimant with Plaintiff's vocational profile and the RFC found by the ALJ. R. 18, 62. The vocational expert testified that such an individual could not perform Plaintiff's past relevant work as an automobile mechanic. R. 62. The ALJ then asked the vocational expert whether the individual could perform any unskilled occupations in the national economy. R. 62–63. In

response, the vocational expert testified that such a claimant could perform such other jobs, and identified the jobs of addresser, 209.587-010 (sedentary, SVP of 2,[4] 101,000 jobs in the national economy), lens inserter, 713.687-026 (sedentary, SVP of 2, 90,000 jobs in the national economy), and stuffer, 731.685-014 (sedentary, SVP of 2, 138,000 jobs in the national economy). R. 63. The vocational expert explained that he had obtained the job data, which was current as of March 29, 2019, from the Bureau of Labor Statistics and the Department of Labor. R. 65. The vocational expert also testified that he used the "SkillTRAN" program to determine this job data. *Id*. Significantly, when Plaintiff's counsel questioned the expert's jobs numbers, the ALJ foreclosed that line of inquiry, stating that it was the ALJ's role to determine whether there exist in the national economy a significant number of jobs that the Plaintiff could perform despite his lessened capacity:

> Q Sir, how -- we're talking about simple, sedentary jobs, how many unskilled, sedentary jobs are there in the DOT?
>
> A Okay. If you'll give me one second, I'll be able to pull that up for you, Counselor. There are 127 that fit the requirement of reasoning level of 2 or below, SVP 2 or 2, and sedentary.
>
> ATTY: And what kind of an erosion of the job base are we talking about?
>
> ALJ: Well, Counselor, I believe Mr. Tasso [the vocational expert] provided his estimate of a number of jobs that exist for the three representatives -- three examples he provided so I'm not sure why we're going down this path.
>
> ATTY: Oh, I'm just wondering, Judge, how much of the – of the sedentary, unskilled job base is the representative sample of. I question some of these job numbers. Actually, I question all of these job numbers and, you know, if this is -- if this is just a small representative sampling, then -- and I can eliminate these jobs because the numbers are faulty, then we're -- then we're talking about something different, but if the decision is that the hypothetical worker can do most of the sedentary, unskilled job base, then I have a different hill to climb.

---

[4] "[U]nskilled work corresponds to an SVP of 1–2[.]" SSR 00-4p, 2000 WL 1898704, at *3; *see also* 20 C.F.R. § 404.1568(a) ("Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.").

ALJ: Well, he did provide his estimate of the numbers. I decide whether these constitute a significant number of jobs in the national economy and a significant erosion of the unskilled, sedentary occupational base I believe is a decision for me to make so I don't see the need for this line of questioning, Counselor.

ATTY: Okay. Understood.

ALJ: Okay.

ATTY: I don't have anything further.

ALJ: All right. Anything else at this point, Counselor?

ATTY: No, Judge.

R. 67–68.

In concluding that Plaintiff was not disabled, the ALJ relied on the testimony of the vocational expert to find that a significant number of jobs exist in the national economy that Plaintiff could perform despite his reduced RFC:

Through the date last insured, if the claimant had the residual functional capacity to perform the full range of sedentary work, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.25 and Rule 201.19. However, the claimant's ability to perform all or substantially all of the requirements of this level of work was impeded by additional limitations. To determine the extent to which these limitations erode the unskilled sedentary occupational base, through the date last insured, the Administrative Law Judge asked the vocational expert whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would have been able to perform the requirements of representative occupations such as addresser (DOT# 209.587-010), sedentary, unskilled, 101,000 jobs nationally, lens inserter (DOT# 713.687-026), sedentary, unskilled, 90,000 jobs nationally and stuffer (DOT# 731.685-014), sedentary, unskilled, sedentary, 138,000 jobs nationally.

Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles. The vocational expert testified that the DOT is silent as to the use of a cane and explained that his testimony about the use of a cane is based on his experience in job analysis and job placement. The undersigned accepts the vocational expert's testimony.

> Based on the testimony of the vocational expert, the undersigned concludes that, through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rules.

R. 28–29.

Plaintiff challenges this determination, arguing that the 2019 jobs data from the SkillTRAN program does not in fact establish the number of jobs testified to by the vocational expert. *Plaintiff's Brief*, ECF No. 16, pp. 31–32 (citing App. 3 (2019 SkillTRAN data), attached thereto). Plaintiff specifically argues that this SkillTRAN jobs data shows that there are only 23 lens inserter jobs—not 90,000 jobs—and only 208 stuffer jobs—not 138,000 jobs—in the national economy. *Id*. at 32. Considering that the Agency has accepted that the job of addresser is effectively obsolete, Plaintiff argues that the ALJ relied on factually incorrect jobs data and that his finding at step five is not supported by substantial evidence. *Id*. (citing App. 4 (copy of Vocational Claims Review Study, that includes Agency admission that some jobs, including addresser, are obsolete as described in the Dictionary of Occupational Titles), attached thereto),

The Acting Commissioner argues that, even accepting that the addresser job is obsolete, the vocational expert identified two other occupations that exist in significant numbers in the national economy. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 22, pp. 31–32. In advancing this argument, the Acting Commissioner contends that "for lens inserter, that same [SkillTRAN] report [attached to Plaintiff's opening brief] indicates that there are between 165,861 and 180,100 jobs 'in this OES [occupational employments survey] Group.'[] And for the stuffer job, the report shows there are between 318,084 and 334,717 jobs total." *Id*. at 32 (citing App. 3, attached to *Plaintiff's Memorandum of Law*, ECF No. 16). The Acting Commissioner therefore argues that the ALJ reasonably relied on the vocational expert's

13

testimony that the jobs of lens inserter and stuffer exist in significant numbers. *Id.* (citing, *inter alia*, *Craigie v. Bowen*, 835 F.2d 56, 58 (3d Cir. 1987), and contending that *Craigie* states "that 200 jobs within the *regional* economy constituted a significant number") (emphasis added).[5]

In reply, Plaintiff contends that "the Record is absolutely clear that the ALJ found [that] 238,000 jobs is a substantial number, and that is the only finding." *Plaintiff's Reply Brief*, ECF No. 24, p. 5. Plaintiff further argues that substantial evidence does not support that finding because the ALJ relied on flawed jobs data. *Id.* at 5–6.

The Court concludes that this issue requires remand for further consideration of this issue. As set forth above, both parties present jobs data that are different from those testified to by the vocational expert and found by the ALJ. While this Court has neither the ability nor the authority to determine the actual number of jobs that might be available to Plaintiff in light of his vocational profile and RFC, *see Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) ("Neither the district court nor this court is empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."); *Terwilliger v. Chater*, 945 F. Supp. 836, 844 (E.D. Pa. 1996) (remanding action where "the Magistrate Judge undertook his own analysis of the case, picking and choosing between conflicting evidence and crediting certain witnesses' testimony over that of others" and, "[i]n doing so, the Magistrate Judge improperly transformed the role of the reviewing court into that of a factfinder"), it was improper for the ALJ to foreclose Plaintiff's ability to pursue this line of inquiry. *See* 20 C.F.R. § 404.950(e) ("The administrative law judge may ask the witness any questions [at the administrative hearing] *material to the issues* and *will allow the parties or their designated representatives to do so*.") (emphasis added); *cf. White v.*

---

[5] The Court notes that the Acting Commissioner does not indicate whether these job numbers reflect numbers in the national or regional economies. *Id.*

14

*Kijakazi*, 44 F.4th 828, 837 (9th Cir. 2022) (remanding action for further proceedings where "White's job estimates differed substantially from those of the VE [vocational expert]. White estimated—using SkillTRAN Job Browser Pro and the same DOT codes the VE had used—that there were 2,957 table worker, 0 assembler, and 1,333 film touch-up inspector jobs in the national economy. The VE had testified that there were 72,000, 65,000, and 32,000 jobs, respectively, in these same occupations"); *Nadile v. Saul*, No. 8:19-CV-9-T-CPT, 2020 WL 1430701, at *5 (M.D. Fla. Mar. 24, 2020) (remanding the action and finding that "[t]he Plaintiff's lack of opportunity to challenge the [vocational expert's] testimony and to explore the apparent inconsistency between the Plaintiff's mental limitations and the reasoning requirements of the three identified jobs further undermines the ALJ's vocational determination."). Under these circumstances, this Court cannot conclude that substantial evidence supports the ALJ's finding at step five of the sequential evaluation process. *Cf. Buck v. Berryhill*, 869 F.3d 1040, 1052 (9th Cir. 2017) (remanding action where "the vast discrepancy between the [vocational expert's] job numbers and those tendered by Buck, presumably from the same source, is simply too striking to be ignored").

This Court therefore concludes that remand of the matter for further consideration of this issue is appropriate.[6] Moreover, remand is appropriate even if, upon further consideration, the ALJ again concludes that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation.").

---

[6] Plaintiff asserts other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of the ALJ's step five findings, the Court does not consider those claims.

.

## V.     CONCLUSION

**WHEREUPON**, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  September 22, 2023                             *s/Norah McCann King*
                                                     _____
                                                     NORAH McCANN KING
                                                     UNITED STATES MAGISTRATE JUDGE